UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:07CV413-R

| | |
|---|---|
| EUGENIA NIXON, and THOMAS NIXON, <br><br>  Plaintiffs, <br> v. <br><br> ROY A. MAJORS, M.D., and HEALTH SOUTH CORP. d/b/a HEALTH SOUTH SURGERY CENTER, <br><br>  Defendants. | **MEMORANDUM AND RECOMMENDATION AND ORDER** |

**THIS MATTER** is before the Court on the following motions and memoranda:

1. the "Motion of Defendant Majors to Strike Allegations from the Complaint" and "Brief . . . in Support . . ." (document ##6-7), both filed October 11, 2007;

2. the "Motion of Defendant Majors to Dismiss for Failure to State a Claim" and "Brief . . . in Support . . ." (document ##8-9), both filed October 15, 2007;

3. the "Plaintiff's Memorandum in Opposition to Defendant Major's Motion to Dismiss" (document #14) filed November 12, 2007;

4. the "Defendant HealthSouth's Motion to Dismiss for Failure to State a Claim" and ". . . Brief in Support . . ." (document ##15-16), both filed November 13, 2007;

5. the "Plaintiff's Memorandum in Opposition to Defendant Major's Motion to Strike" (document #17) filed November 13, 2007;

6. the "Reply Brief of Defendant Majors in Support of Motion to Dismiss" (document #18) filed November 21, 2007;

7. the "Reply Brief of Defendant Majors in Support of Motion to Strike" (document #19) filed November 21, 2007;

8. the "Plaintiff's Memorandum in Opposition to Defendant HealthSouth's Motion to Dismiss" (document #22) filed December 10, 2007; and

9. the "Defendant HealthSouth's Reply Brief in Support of Motion to Dismiss" (document #26) filed December 26, 2007.

This matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the Defendants' Motions are now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will <u>deny</u> Defendant Roy A. Majors, M.D.'s Motion to Strike, and respectfully recommend that both the Defendants' Motions to Dismiss be <u>denied</u>, as discussed below.

## I. <u>PROCEDURAL AND FACTUAL BACKGROUND</u>

This action seeks damages for a hostile work environment in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e ("Title VII"), and state law claims for intentional infliction of emotional distress and loss of consortium.

The Plaintiffs, Eugenia Nixon and her husband Thomas Nixon, are residents of Concord, North Carolina. From July 2002 to August 2006, Ms. Nixon was a registered nurse employed in the Defendant HealthSouth Corporation's Charlotte, North Carolina facility. In addition, HealthSouth employs Defendant Roy A. Majors, M.D. to perform surgery in its Charlotte facility on a contract basis.

Beginning in early 2005 and continuing until her Family Medical Leave Act ("FMLA") leave

of absence on August 17, 2006, Ms. Nixon alleges that she was subjected to a hostile work environment. For example, on one occasion another operating room nurse, Chris Helms, drew a penis on the back of Dr. Majors' surgical gown while he was performing surgery. Ms. Helms also frequently discussed her small breast size in the office, and with Dr. Majors' approval, sought donations in a "boob job fund jar" for a breast augmentation. In another incident, Dr. Majors had Ms. Nixon call Ms. Helms to the operating room to hear her "theme" song, "Don't look now, Mama's got her boobs out." In addition, by coincidence, the Plaintiffs came upon Ms. Helms and her husband at a restaurant – at which time Ms. Helms asked Mr. Nixon if he would like to see her new breasts.

Ms. Nixon asserts that Dr. Majors was engaged in an extramarital affair with both Ms. Helms and another HealthSouth employee, Chasity Hedrick. Ms. Helms and Ms. Hedrick allegedly publicly discussed their plans to rendezvous with Dr. Majors to engage in intercourse. Ms. Helms often sat on Dr. Majors' lap facing him in plain view of other employees.

Another employee, Donald Brown, frequently made comments to Ms. Nixon regarding "how good [her] butt looks in those jeans; it makes my day." He also wondered aloud on one occasion as to whether Ms. Nixon's breasts had grown, and Dr. Majors commented that he would guess about a size 36. Mr. Brown also grabbed Ms. Nixon in the public waiting area during office hours and said, grabbing his groin area, "you wanted chocolate; I have all the chocolate you can handle."

In another incident, Ms. Helms, Mr. Brown and other HealthSouth employees taped a picture of a lingerie model to Dr. Majors' dictation station – a conversation ensued discussing which employees' breasts most resembled those of the model. The conversation ended in Dr. Majors' propositioning another employee in the manner of "if you show me yours, I'll show you mine," and

then lying down on a stretcher, pointing to his genitals, and exclaiming that this employee gives him a "hard on."

In another incident, Dr. Majors constructed an object that resembled feces out of operating room supplies and told Ms. Nixon to give the artificial feces to the anesthesiologist the next time he requested a stool.

On numerous occasions, and specifically following each of the above incidents, Ms. Nixon complained to the HealthSouth manager and asked that corrective action be taken. She also requested that Ms. Helms not be promoted to operating room manager because of her unprofessional behavior and the alleged affair with Dr. Majors. However, Ms. Helms was given the promotion, according to the office manager, "because that's what Dr. Majors and corporate in Alabama want." The office manager also told Ms. Nixon that she had to do whatever it took to make the doctors happy.

On August 17, 2006, Ms. Nixon, after seeing a psychiatrist, went on medical leave, and alleges that she is unable to return to work. In November 2006, a mental health professional diagnosed Ms. Nixon as "disabled" as a result of the mental distress she sustained while employed by HealthSouth. In addition, it is alleged that Ms. Nixon is no longer "capable/willing to engage in normal sexual relations" with her husband.

On August 27, 2007, the Plaintiffs filed their Complaint in the Superior Court of Mecklenburg County, North Carolina. On September 28, 2007, the Defendants removed the state court action to federal court. Removal has not been challenged and appears proper. The subject Motions have been fully briefed as set forth above and are, therefore, ripe for determination.

## II. DISCUSSION OF CLAIMS

### A. Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), a court may "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike is timely if "made by a party before responding to a pleading," and Dr. Majors had not responded to the Complaint when he filed the subject Motion – making it timely.

As the Fourth Circuit has stated, "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" Waste Management Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (citations omitted). "Moreover, a motion to strike on the basis of irrelevancy should only be granted when it is clear that the material in question can have no possible bearing upon the subject matter of the litigation and the material may prejudice the other party." Simaan, Inc. v. BP Products North America, Inc., 395 F. Supp. 2d 271, 278 (M.D.N.C. 2005) (citations omitted).

Dr. Majors seeks to have the allegations that he was participating in an extramarital affair with two employees stricken from the Complaint because these allegations are "wholly immaterial to plaintiffs' claims, [and] they serve no purpose other than to attempt to create discord and scandal." The Plaintiffs counter that this material is relevant to explain the underlying reasons why Ms. Nixon's complaints about the work environment fell on deaf ears, and to show the pervasiveness of the sexual innuendos and conduct in the subject work environment. When considering the Plaintiffs' arguments in light of the general disfavor of a Rule 12(f) motion, it cannot be said that the material in question will have "no possible bearing upon the subject matter of the litigation." Simaan, 395

5

F. Supp. 2d at 278. Accordingly, Defendant Majors' Motion to Strike will be <u>denied</u>.

   B. <u>Motions to Dismiss</u>

### 1. <u>Standard of Review</u>[1]

"A motion to dismiss under [Fed. R. Civ. P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of North Carolina v. Martin</u>, 980 F.2d 943, 952 (4th Cir.), <u>cert. denied</u>, 510 U.S. 828 (1993), <u>citing</u> 5A C. Wright & A. Miller, <u>Fed. Practice and Procedure</u> §1356 (1990).

"A pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In the United States Supreme Court's recent examination of this standard, it explained:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels or conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact). . . . And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely."

<u>See</u> <u>Bell Atlantic Corp. v. Twombly</u>, __ U.S. __, 127 S. Ct. 1955, 1964-65 (May 21, 2007) (internal citations omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most

---

[1]Defendant Majors argues that the North Carolina Rules of Civil Procedure should be applied rather than the Federal Rules of Civil Procedure because the Court should "limit its consideration to those discrete incidents alleged and not accept them as simply representative of other incidents that *may* have occurred but which were not alleged in the Complaint." This argument is moot because the undersigned has only considered the incidents actually alleged in the Complaint.

favorable to the nonmoving party, assuming factual allegations to be true. See, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); Martin Marietta v. Int'l Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992); and Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

## 2. Hostile Work Environment Claim

Title VII makes it an "unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C.A. § 2000e-2(a)(1). Further, Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted).

To establish sexual harassment based on a hostile or abusive work environment, a plaintiff is required to prove that the offending conduct: "(1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." Ocheltree v. Scollon Productions, Inc., 335 F.3d 325, 331 (4th Cir. 2003) (citations omitted).

Elaborating on the second element of a claim for a sexually hostile work environment, the critical inquiry is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Id., quoting Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 80 (1998). A trier of fact may find discrimination where "a female victim is harassed in such sex-specific and derogatory terms . . . as to make it clear

7

that the harasser is motivated by general hostility to the presence of women in the workplace." Oncale, 523 U.S. at 80.

Concerning the third element of a hostile work environment claim – proof of conduct sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment – a court must consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. "This standard is designed to 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" Ocheltree, 335 F.3d at 333, quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal citations omitted). See also Hartsell v. Duplex Prod., Inc., 123 F.3d 766, 773 (4th Cir. 1997) ("There is no allegation that Hartsell was inappropriately touched, propositioned, flirted with, taunted, or even ogled."); Hopkins v. Baltimore Gas and Elec. Co., 77 F.3d 745, 754 (4th Cir. 1996) (listing cases involving infrequent, isolated incidents in which court had held that harassment was not severe or pervasive as a matter of law). However, this standard does protect "working women from the kind of male attentions that can make the workplace hellish for women." Ocheltree, 335 F.3d at 333 (citations omitted).

Finally, as to the fourth element, where an employee is harassed by a coworker, "the employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it," and where the employee is harassed by a supervisor, "an employer may be found vicariously liable." Id. at 333-34.

Applying these legal principles to the facts of this case, and taking the evidence in the light

most favorable to Ms. Nixon, there is no dispute at this time that the first and fourth elements have been met. Ms. Nixon has made it clear that the conduct was unwelcome. Likewise, she has sufficiently alleged that she complained about the conduct to her employer, but no steps were taken to stop it.

Defendant HealthSouth seeks dismissal of this claim because the complained of conduct was not based on her gender (second element), and was not sufficiently severe and pervasive (third element). Regarding the second element, the Court concludes that the complained of conduct was related to Ms. Nixon's gender. The incidents noted above included multiple references to breast size, prominent display of a drawing of a penis on a doctor's clothing during surgery, the doctor groping himself and making a crude sexual comment, and another employee grabbing Ms. Nixon and then grabbing his groin area and making a crude sexual comment – all with the likely intent of embarrassing Ms. Nixon. In short, at this point in the proceedings, Ms. Nixon has sufficiently alleged that she was the target of these comments because of her gender.

Ms. Nixon has also sufficiently alleged the severity and pervasiveness required by Title VII, that is, in the light most favorable to the Plaintiff, a reasonable fact finder could find that because of these sexually explicit comments and incidents the workplace had become "hellish" for her. See Ocheltree, 335 F.3d at 333. The undersigned acknowledges the burden Ms. Nixon will face to ultimately succeed with this claim, but given the factual allegations in the Complaint it would be improper to dismiss this action prior to discovery. Accordingly, the undersigned will respectfully recommend that Defendant HealthSouth's Motion to Dismiss Ms. Nixon's hostile work environment claim be <u>denied</u>.

### 3. **Intentional Infliction of Emotional Distress Claim**

The Defendants next argue that the intentional infliction of emotional distress claim should be dismissed because Ms. Nixon does not allege conduct sufficiently "extreme and outrageous" to support the claim.

In North Carolina, to state a claim for intentional infliction of emotional distress a plaintiff must show: (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress of another. See Thomas v. Northern Telecom, Inc., 157 F. Supp. 2d 627, 634-35 (M.D.N.C. 2000); Dickens v. Puryear, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981); and Simmons v. Chemol Corp., 137 N.C. Ct. App. 319, 325, 528 S.E.2d 368, 371 (2000).

North Carolina law establishes a stringent standard that permits liability to be imposed only where the conduct at issue is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hogan v. Forsyth Country Club, 79 N.C. App. 483, 493-94, 340 S.E.2d 116, 123 (1986). Whether the conduct alleged meets this stringent standard is a question of law for the court, not a question of fact for the jury. Id. 79 N.C. App. at 490, 340 S.E.2d at 121. Accord Wagoner v. Elkin City Schools' Bd. of Educ., 113 N.C. App. 579, 586, 440 S.E.2d 119, 123; Johnson v. Bollinger, 86 N.C. App. 1, 11, 356 S.E.2d 378, 381 (1987); and Briggs v. Rosenthal, 73 N.C. App. 672, 676, 327 S.E.2d 308, 311(1985). Furthermore, "in employment actions, North Carolina courts have been reluctant to find intentional infliction of emotional distress claims actionable." Frazier v. First Union Nat. Bank, 747 F. Supp. 1540, 1553 (W.D.N.C. 1990).

At this early pre-discovery stage in the proceedings, it cannot be said that, as a matter of law, the Plaintiff has not adequately alleged extreme and outrageous conduct to survive the subject

10

motion to dismiss. See, e.g., Denning-Boyles v. WCES, Inc., 123 N.C. App. 409, 412-14, 473 S.E.2d 38, 40-41 (1996) (finding that sexual remarks and advances were sufficiently extreme and outrageous to survive *summary judgment*). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Further, "a complaint need not 'make a case' against a defendant or '*forecast evidence* sufficient to prove an element' of the claim. . . . It need only '*allege facts* sufficient to state elements' of the claim." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th Cir. 2005) (internal citations omitted and emphasis in original). Whether the sexual comments and advances will ultimately be sufficiently outrageous remains to be determined, but the Plaintiff has at least alleged sufficient facts at this stage. Thus, the undersigned will respectfully recommend that the Defendants' Motions to Dismiss Ms. Nixon's intentional infliction of emotional distress claim be denied.

### 4. Loss of Consortium Claim

The Defendants argue that Mr. Nixon's derivative claim for loss of consortium must be dismissed if Ms. Nixon's claims did not survive the subject motion. See Nicholson v. Hugh Chatham Mem'l Hosp., Inc., 300 N.C. 295, 304, 266 S.E.2d 818, 823 (N.C. 1980) (holding that "a spouse may maintain a cause of action for loss of consortium due to the negligent actions of third parties so long as that action for loss of consortium is joined with any suit the other spouse may have instituted to recover for his or her personal injuries"). The undersigned will recommend that Ms. Nixon's claims not be dismissed, and, accordingly, must respectfully recommend that the Defendants' Motions to Dismiss Mr. Nixon's loss of consortium claim also be denied.

## III. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the "Motion of Defendant Majors to Strike Allegations from the Complaint" (document #6) is **DENIED**.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the Defendants' Motions to Dismiss (document ##8, 15) be **DENIED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Martin K. Reidinger.

**SO RECOMMENDED AND ORDERED.**

Signed: December 28, 2007

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge