**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

**CIVIL CASE NO. 3:07cv413**

| | | |
|---|---|---|
| **EUGENIA NIXON, and husband THOMAS NIXON,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **MEMORANDUM OF DECISION** |
| **ROY A. MAJORS, M.D., and HEALTH SOUTH CORP., d/b/a HEALTH SOUTH SURGERY CENTER,** | ) ) ) ) ) | **AND ORDER** |
| **Defendants.** | ) ) | |

**THIS MATTER** is before the Court on the following:

1.    Defendant Majors' Motion to Dismiss [Doc. 8], filed October 15, 2007;

2.    Objections by Defendant Majors to Memorandum and

Recommendation and Order filed December 28, 2007 [Doc. 29], filed

December 28, 2007;

3.    Defendant Health South's Motion to Dismiss [Doc.15], filed

November 13, 2007;

1

4.    Defendant Health South's Objections to Memorandum and

      Recommendation and Order filed December 28, 2007 [Doc. 40], filed

      January 17, 2008;

5.    Reply Brief of Defendant Majors in Support of Objections to

      Memorandum and Recommendation and Order filed December 28,

      2007 [Doc. 41], filed February 8, 2008;[1] and

6.    Motion of B. Ervin Brown, II to Withdraw as Counsel for Plaintiff[s]

      [Doc. 42], filed April 21, 2008.

      Pursuant to standing orders of designation and 28 U.S.C. §636, the

undersigned referred the Defendants' motions to dismiss to the Magistrate

Judge for a recommendation as to disposition.  Having conducted a *de*

*novo* review of those portions of the recommendation to which specific

objections were filed, the recommendation is adopted as to Defendant

Health South Corporation and that Defendant's motion is denied.  The

recommendation is rejected as to Defendant Majors and his motion to

_____

[1]In this document, Defendant Majors argues that because the Plaintiff
failed to file a response to the objections of Defendant Health South, the
undersigned should rule that the Plaintiff has conceded those objections
are accurate.  This argument is without merit as Federal Rule of Civil
Procedure 72(b)(2) provides that a party "may respond to another party's
objections" but does not require response.

dismiss is granted.  28 U.S.C. §636(b); Fed.R.Civ.P. 72.

## STANDARD OF REVIEW

A District Court reviews specific objections to a Memorandum and Recommendation under a *de novo* standard.  28 U.S.C. §636(b).  "Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court."  Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir.1987), *overruled on other grounds* Douglass v. United Ervs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996).  To the extent that a party asserts claims in the objections which were not asserted in support of or in opposition to the motion, *de novo* review is not warranted.  Price v. Dixon, 961 F.Supp. 894 (E.D.N.C. 1997)(claims cannot be raised for the first time in objections to a memorandum and recommendation).  Likewise, claims which do not point to specific mistakes do not receive *de novo* review. Wells v. Shriners Hospital, 109 F.3d 198, 200 (4th Cir. 1997)(boilerplate objections will not avoid the consequences of failing to object altogether). This Court therefore does not conduct a *de novo* review of those portions of the Memorandum and Recommendation to which non-specific

objections have been filed.  Likewise, citations to portions of the motion to

dismiss are not specific objections to which *de novo* review is provided.

Because one of the objections to the Memorandum and

Recommendation relates to the proper standard of review in connection

with a motion to dismiss, the standard of review pertaining to that motion

will also be recounted.  The Defendants moved for dismissal pursuant to

Federal Rule of Civil Procedure 12(b)(6).  The Supreme Court has recently

clarified the standard of review  used to evaluate complaints in connection

with Rule 12(b)(6) motions.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss
> does not need detailed factual allegations, a plaintiff's obligation
> to provide the "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic recitation of
> the elements of a cause of action will not do[.] Factual allegations
> must be enough to raise a right to relief above the speculative
> level on the assumption that all the allegations in the complaint
> are true (even if doubtful in fact)[.]
>
> ...
>
> [This standard does] not require heightened fact pleading of
> specifics, but only enough facts to state a claim to relief that is
> plausible on its face.

Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, at 164-65, 174, 167

L.Ed.2d 929 (2007),(citations omitted).  As has always been the case,

"when ruling on a defendant's motion to dismiss, a judge must accept as

true all of the factual allegations contained in the complaint." <u>Erickson v. Pardus</u>, __ U.S. __, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). However, the court "'need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" <u>Giarratano v. Johnson</u>, 521 F.3d 298, 302 (4th Cir. 2008).

The Supreme Court thus does not require "a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157 (2nd Cir. 2007), *petition for certiorari filed* 76 USLW 3349 (2007) (emphasis in original); *accord*, <u>Giarratano</u>, <u>supra</u>; <u>Self v. Norfolk Southern Corp</u>., 264 Fed.Appx. 313 (4th Cir. 2008) (citations omitted).


## ALLEGATIONS OF THE COMPLAINT

Because the objections attack the Magistrate's factual recitation, the Court reviews the Complaint. The first claim is based on a hostile work environment and is alleged only against Defendant Health South Corporation (Health South). The second claim, alleged against both

Defendants, is for intentional infliction of emotional distress. The third claim for loss of consortium is also alleged against both Defendants.

Health South operates a surgical facility in Charlotte, North Carolina under the name of Health South Surgery Center (Surgery). [Doc. 4, filed October 1, 2007, at 1-2]. Health South employs Defendant Majors (Majors), who is an orthopedic surgeon, on a contract basis to perform surgery at its surgical center. [Id.]. Plaintiff Eugenia Nixon (Nixon) worked as an operating room circulating nurse at Surgery from July 2002 through August 17, 2006. [Id.]. She was employed by Health South. [Id.].

Nixon alleges that she was subjected to a hostile work environment by the behavior of the employees of Health South and Majors. [Id.]. Examples of such conduct are alleged in the Complaint. On one occasion in 2005, at a time when Majors was having an extramarital affair with a female operating room nurse, Chris Helms, Helms drew a "large penis" on the back of Major's surgical gown and left the operating room door open so that all other employees could see. [Id., at 2]. Helms frequently sat in Majors' lap, facing him, in the common work area at Surgery. [Id.]. Majors was aware of and approved inappropriate comments by Helms about her small breasts. [Id.]. Helms walked around the Surgery with a cup seeking

donations for breast implants.  [Id., at 2-3].

Donald Brown was a Health South employee who made comments to Nixon at Surgery about "how good your butt looks in those jeans[.]"  [Id., at 3].  Other employees witnessed these comments.  [Id.].  On another occasion, Brown asked Nixon if her breasts had grown, eliciting a response from Majors that they appeared to be a size 36.  [Id.].

Majors asked Nixon on one occasion to call Helms into the operating room to hear Helms' theme song, "Don't look now, Mama's got her boobs out."  [Id.].

Brown once grabbed Nixon by the arm in the waiting area of Surgery during business hours and said to her, "You wanted chocolate; I have all the chocolate you can handle."  [Id.].  As he said this, he reached down and grabbed his groin while looking at Nixon.  [Id.].

At the conclusion of one surgery, Majors told Nixon to bring him a basin of water, cast plaster and betadine.  [Id.].  When she complied, he fashioned a mold that resembled feces.  [Id.].  Majors placed the "feces" on the bed next to the surgical patient.

Helms and another Health South employee, Chasity Hedrick, discussed in front of Nixon their plans to meet Majors for sex.  [Id., at 4].  In

early 2006, Helms and Brown placed a photograph of a lingerie model in Major's station.  [Id.].  They then discussed with Majors which female employee the breasts of the model most resembled.  [Id.].  At one point, Majors lay down on a patient stretcher, pointed at his genitals and stated that a female employee called Natasha, "gives me a hard on."  [Id.].

Nixon alleges that after each of these incidents she complained to the office manager for Surgery and asked that corrective action be taken. [Id.].  Nixon also requested that Helms not be promoted to the position of operating room manager because of Helms' unprofessional behavior, foul language and affair with Majors.   [Id., at 4-5].  Nixon was told on more than one occasion that she must do whatever it took to keep the doctors happy.  [Id.].  No corrective action was ever taken.  [Id.].


## DISCUSSION

**Objections related to the Title VII claim.**

The Plaintiff's first cause of action is for hostile work environment pursuant to 42 U.S.C. §2000e-2(a) against only Defendant Health South.

Title VII makes it unlawful for an employer to discriminate against any individual with respect to the terms, conditions or privileges of employment

because of that person's sex.  42 U.S.C. §2000e-2(a)(1).

> Such discrimination includes maintaining a [sexually] hostile work
> environment; *i.e.*, a "workplace ... permeated with discriminatory
> intimidation, ridicule, and insult that is sufficiently severe or
> pervasive to alter the conditions of the victim's employment and
> create an abusive working environment.

Jordan v. Alternative Resources Corp., 458 F.3d 332, 339 (4th Cir. 2006),

*certiorari denied* 127 S.Ct. 2036, 167 L.Ed.2d 804 (2007) (citations

omitted).  "To establish a Title VII claim for sexual harassment in the

workplace, a female plaintiff must prove that the offending conduct (1) was

unwelcome, (2) was based on her sex, (3) was sufficiently severe or

pervasive to alter the conditions of her employment and create an abusive

work environment, and (4) was imputable to her employer.  Ocheltree v.

Scollon Productions, Inc., 335 F.3d 325, 331 (4th Cir. 2003), *certiorari*

*denied* 540 U.S. 1177, 124 S.Ct. 1411, 158 L.Ed.2d 77 (2004).

Defendant Health South does not dispute that the Plaintiff's

allegations fulfill the first and fourth elements, but objects to the

Magistrate's conclusion that the alleged behavior meets the second and

fourth elements.

First, Health South argues that Plaintiff's allegations are insufficient

to meet the element that the offending conduct be based on her sex.

"While some of the conduct alleged by Ms. Nixon 'relates' to 'sexual content or connotations,' very little of the alleged conduct was directed at her 'because of her sex[.]'" [Id.].  Health South argues that since Nixon's female co-workers participated in the conduct that this did not create a hostile work environment but was merely "flirtatious (although arguably inappropriate) behavior." [Doc. 35 at 3].  Likewise, Health South argues that Nixon was not the target of the behavior and thus, the Magistrate's statement to that effect is incorrect.  Based n these arguments Health South concludes that the Complaint does not allege behavior so pervasive or severe as to state a claim for hostile work environment.

The element requiring that the discriminatory conduct occur "because of [the plaintiff's] sex has been defined as follows.

> A woman may prove sex-based discrimination in the workplace even though she is not subjected to sexual advances or propositions.  A trier of fact may reasonably find discrimination, for example, when a woman is the individual target of open hostility because of her sex or when "a female victim is harassed in such sex-specific and derogatory terms ... as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace."

Ocheltree, 335 at 331-32 (internal citations omitted).  "Sexual harassment occurs when the victim is subjected to sex-specific language that is aimed to humiliate, ridicule or intimidate."  Jennings v. University of North

<u>Carolina</u>, 482 F.3d 686, 695 (4th Cir. 2007), *certiorari denied* 128 S.Ct. 247, 169 L.Ed.2d 147 (2007).  Several of Plaintiff's allegations come within the purview of the existing case law as to this element.  Both Brown and Majors are alleged to have commented on Nixon's breast size.  <u>Id</u>.  Brown commented on Nixon's rear end.  On another occasion, Brown grabbed her arm, made an explicit comment that a trier of fact could take to be propositioning her to have sex with him and made what could plausibly be found to be a braggartly comment about his own anatomy.  <u>Moser v. MCC Outdoor, L.L.C.</u>, 256 Fed.Appx. 634 (4th Cir. 2007) (incidents of direct harassment contributed to plaintiff's perception of boorish comments as indicating harasser desired to have sex with plaintiff).  After looking at a photograph, Majors and Brown commented on the breast size of various women in the office.  <u>Jennings</u>, 482 F.3d at 695-96. (A coach's sexually charged comments in a team setting, even if not directed specifically to the plaintiff, are relevant to determining whether the plaintiff was subjected to sex-based harassment);   <u>Ocheltree</u>, 335 F.3d 325. (viewing sexually explicit pictures in a magazine and showing them to plaintiff).  Majors made reference to having an erection in front of Nixon because of the size of another co-worker's breasts.  <u>Id</u>. (shop talk portrayed women as sexually

subordinate).  Majors also told Nixon to bring in Helms to hear a sexually explicit song.  Id. (song degrading to women).

"[A] plaintiff need only allege that she suffered a hostile work environment because of her gender, not that all of the offensive conduct was *specifically* aimed at her."  Patane v. Clark, 508 F.3d 106, 114 (2nd Cir. 2007); Jennings, 482 F.3d at 695. (comments about bodies portrayed women as sexual objects; plaintiff did not have to be sole, persistent target).  "[S]exually charged [comments], even if not directed specifically to the plaintiff, are relevant to determining whether the plaintiff was subjected to sex-based harassment."  Id. at 695.   "[A] reasonable jury could find that [Nixon] was the individual target of harassment because of her sex. Moreover, a jury could find that the men in the [surgical center] 'harassed [Nixon] is such sex-specific and derogatory terms ... as to make it clear that [they were] motivated by general hostility to the presence of [a] wom[a]n in the workplace.'" Ocheltree, at 332; Moser, 256 Fed.Appx. 634. (noting that inappropriate sexual behavior concerning other women still related to the plaintiff's sex).  Despite Health South's attempts to characterize the conduct in this case as "flirting" or joking, it "went far beyond simple teasing and qualified as sexual harassment."  Jennings,  482 F.3d at 695-96. (the

nature of the language used showed that the speaker was targeting women because of their sex).

Plaintiff has alleged a set of facts that, taken as a whole, describe actions designed "to humiliate, ridicule or intimidate" her because of her sex.  <u>Jennings</u>, 482 F.3d at 695.  The fact that other women in the workplace condoned and even participated in the alleged actions does not negate the fact that they portrayed women as sexually subordinate.  The allegations presented in the Complaint are sufficient to allege the element requiring that the Defendant's acts be "based upon the plaintiff's sex."  For that reason this objection of Defendant Health South to the Memorandum and Recommendation is overruled.

Health South also objects to the Magistrate's conclusion that Plaintiff's allegations satisfy the third element, namely discrimination sufficiently severe or pervasive to create a hostile or abusive environment. "[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).  Health South does not dispute that Nixon subjectively experienced

the behavior at Surgery as offensive, hostile and abusive.

Even at the summary judgment stage, as in the <u>Jennings</u> decision, "[w]hether gender-oriented harassment amounts to actionable (severe or pervasive) discrimination 'depends on a constellation of surrounding circumstances, expectations, and relationships.'" <u>Jennings</u>, 482 F.3d at 696. "Evidence of a general atmosphere of hostility toward those of the plaintiff's gender is considered[.]" <u>Id</u>. The specific incidents alleged which are cited above demonstrate that Brown and Majors directed harassment toward all women in the workplace. <u>Id</u>. "We are, after all, concerned with the 'environment' of ... hostility, and whatever the contours of one's environment, they surely may exceed the individual dynamic between the complainant and [the harasser]." <u>Spriggs v. Diamond Auto Glass</u>, 242 F.3d 179, 184 (4th Cir. 2001). "Explicit and derogatory references to women" are alleged to have been rampant at the surgical center and Brown and Majors were directly involved. <u>Smith v. First Union Nat. Bank</u>, 202 F.3d 234, 242 (4th Cir. 2000). The allegations of the Complaint show a frequency of specific incidents of direct harassment as well as a general atmosphere thereof. <u>Id</u>. Health South is hard pressed to argue that Nixon's allegation that Brown actually grabbed Plaintiff and then grabbed

his own groin is anything less than an objectively humiliating act within the work place, and that Defendant Majors' reference to his erection was nothing less than degrading to the women present, particularly the woman who was the object of the comment. Id. Indeed, if evidence of such actions is believed by a finder of fact, Brown's conduct was physically intimidating. Id. Moreover Nixon alleges that when she complained to Health South's office manager, she was told to do whatever it took to keep the doctors happy. This alleged disparity in power trapped Nixon, even when she attempted to remedy the situation. Jennings, 482 F.3d at 897.

> [The Defendants] fail[] to recognize that a woman's work environment can be hostile even if she is not subjected to sexual advances or propositions. ... A work environment consumed by remarks that intimidate, ridicule, and maliciously demean the status of women can create an environment that is as hostile as an environment that contains unwanted sexual advances.

Smith, 202 F.3d at 242. In this case, both situations existed.[2]

For these reasons the second objection of Defendant Health South to

---

[2]The cases cited by Health South are inapposite. In Hopkins v. Baltimore Gas and Elec. Co., 77 F.3d 745 (4th Cir. 1996), the incidents occurred intermittently over a seven year period. The same is true for Capouch v. Cook Group, Inc., 2006 WL 1582388 (W.D.N.C. 2006). In Shook v. Shook, 2007 WL 2491327 (W.D.N.C. 2007), the plaintiff admitted that there was never any offensive conduct directed at her and that she never complained to anyone about harassment or an abusive environment.

the Memorandum and Recommendation of the Magistrate Judge is overruled.

Next, Health South objects to the use of the word "hellish" by the Magistrate Judge in his decision. The Magistrate Judge used this word in quoting the language from the <u>Ocheltree</u> decision. The Court finds this objection to be frivolous.

Health South also objects to the Magistrate's statement that it would be improper to dismiss the action prior to discovery, claiming that is an inappropriate standard of review. The comment by the Magistrate is of no moment. The Court has applied the standard of review applicable to motions pursuant to Rule 12(b)(6) and to the objections to the Memorandum and Recommendation and concludes that the motion should be denied.

**Objections related to the claim for intentional infliction of emotional distress.**

Defendant Majors objects to the Magistrate's recommendation to deny his motion to dismiss the claim for intentional infliction of emotional distress, arguing that most of the incidents alleged do not relate to his

behavior but to that of female co-workers. Only Majors' behavior, he argues, may be considered against him. He also argues that none of the incidents alleged rise to the level required to state such a claim. Health South makes the same argument and criticizes the Magistrate for failing to make a "fact specific" analysis. Both parties claim the Magistrate Judge relied on a dated case, Denning -Boyles v. WCES, Inc., 123 N.C.App. 409, 473 S.E.2d 38 (1996), instead of Guthrie v. Conroy, 152 N.C.App. 15, 567 S.E.2d 402 (2002).

> The elements for the tort of intentional infliction of emotional distress are: "1) extreme and outrageous conduct by the defendant 2) which is intended to cause and does in fact cause 3) severe emotional distress." Conduct is extreme and outrageous when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." The determination of whether the alleged conduct is considered extreme and outrageous is a question of law for the trial judge, however, the jury must determine whether the conduct is "sufficiently extreme and outrageous to result in liability."

Smith-Price v. Charter Behavioral Health Systems, 164 N.C.App. 349, 354-55, 595 S.E.2d 778, 782-83 (2004) (citations omitted).

In Guthrie, the North Carolina Court of Appeals considered a claim for intentional infliction of emotional distress based on sexual harassment. That Court stated:

our review of the relevant case law indicates that claims of IIED (intentional infliction of emotional distress) based upon allegations of sexual harassment generally have included one or more of the following: an unfair power relationship between defendant and plaintiff; explicitly obscene or "X rated" language; sexual advances towards plaintiff; statements expressing desire to engage in sexual relations with plaintiff; or, defendant either touching plaintiff's private areas or touching any part of the plaintiff's body with his private parts.

152 N.C.App. at 24, 567 S.E.2d at 411.

The Guthrie court found the conduct of the plaintiff's co-worker offensive and juvenile but not severe enough to be outrageous. That case, however, did not involve a power discrepancy, obscene language, sexual advances, statements expressing a desire for sex or touching. In this case, as to Defendant Health South, the incidents alleged fall into all four of these categories. In fact, the alleged incident of Brown grabbing Plaintiff, of itself, fits all four categories. The Court concludes, under the Guthrie test, that as to Defendant Health South the claim passes a motion pursuant to Rule 12(b)(6). See, *e.g.*, Sheaffer v. County of Chatham, 337 F.Supp.2d 709, 733 n.14 (M.D.N.C. 2004) ("North Carolina courts have often found extreme and outrageous conduct *only* in cases involving sexual advances, obscene language and inappropriate touching.") (emphasis provided); Bratcher v. Pharmaceutical Product Development, Inc., 545 F.Supp.2d

533, 545 (E.D.N.C. 2008) ("In cases where North Carolina courts have found IIED claims actionable, the conduct has been extremely egregious, and involved sexual advances, obscene language, and inappropriate touching."); Magidson v. Wachovia Bank, NA, 2007 WL 4592230 (M.D.N.C. 2007).

The Court notes that even though Plaintiff's allegations concerning Mr. Brown would meet the requirement for outrageous behavior under current case law, Plaintiff chose not to bring suit against Mr. Brown. The alleged actions of Defendant Majors, however, do not involve any sexual advances or inappropriate touching of the Plaintiff by Defendant Majors. In fact, the only allegation made by Plaintiff regarding a remark by Defendant Majors that could be considered obscene is his crude reference to an erection. This, however, is a single incident, much like the single penis reference held to be insufficient to state an intentional infliction claim in Guthrie. 152 N.C. App at 24, 567 S.E.2d at 410. Moreover, this statement is specifically alleged to have been directed at someone other than Plaintiff. It is not even alleged that Defendant Majors was or would have been aware of Plaintiff's presence. This does not come within the purview of what the North Carolina Courts have held to rise to the level of extreme

and outrageous conduct, although it was without doubt rude, tasteless and unprofessional.

Since the Plaintiffs' loss of consortium claim against Defendant Majors is dependent upon the survival of an underlying tort claim against Defendant Majors, the dismissal of the Intentional Inflection claim necessitates the dismissal of the loss of consortium claim against Defendant Majors. Nicholson v. Hugh Chatham Memorial Hospital, Inc., 300 N.C. 295, 266 S.E.2d 818 (1980); Jones v. Southcorr, L.L.C., 324 F.Supp.2d 765, 783 (M.D.N.C. 2004), *affirmed* 117 Fed.Appx. 291 (4th Cir. 2004).

For these reasons the objections of Defendant Health South to the Memorandum and Recommendation of the Magistrate Judge recommending that its Motion to Dismiss the Plaintiffs' intentional infliction of emotional distress and loss of consortium claims are overruled. As to the objections of Defendant Majors, however, they will be sustained and the Motion to Dismiss of Defendant Majors will be granted.

**The motion of Plaintiffs' counsel for leave to withdraw.**

On April 21, 2008, Plaintiffs' counsel moved for leave to withdraw,

citing irreconcilable differences. [Doc. 42].  The Plaintiffs filed a response to the motion asking that a ruling be deferred until the motions to dismiss should be resolved. [Doc. 45, filed June 2, 2008].  The motion was, in fact, deferred by an order from the Magistrate Judge on June 5, 2008. [Doc. 47].

Since no new counsel has made an appearance on behalf of the Plaintiffs since the filing of the motion to withdraw, and since the motion is quite vague as to the reasons for seeking withdrawal without substitute counsel having been secured, and substantial time has elapsed since the filing of the motion during which the Plaintiffs may have ironed out their differences with their lawyer, the Court will, in its discretion, deny the motion to withdraw without prejudice to refiling now that this matter will be resuming an ordinary track.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Motion of Defendant Majors to Dismiss for Failure to State a Claim [Doc. 8], filed October 15, 2007, is hereby **GRANTED** and this action is hereby **DISMISSED** in its entirety as to Defendant Majors with prejudice;

**IT IS FURTHER ORDERED** that the Defendant Health South's Motion to Dismiss for Failure to State a Claim [Doc. 15], filed November 13, 2007, is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the Clerk of Court is instructed to terminate Document 36 as a pending motion because the motion was withdrawn by Document 38, filed January 18, 2008;

**IT IS FURTHER ORDERED** that Motion of B. Ervin Brown, II to Withdraw as Counsel for Plaintiff[s] [Doc. 42] is hereby **DENIED** without prejudice;

**IT IS FURTHER ORDERED** that on or before fifteen (15) days from entry of this Order, the remaining parties shall file a certificate of initial attorneys' conference and shall include therein a statement as to whether they request mediation prior to discovery.

Signed: September 2, 2008

Martin Reidinger
United States District Judge